WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Sabra Albritton, | ) | No. CV 12-924-TUC-HCE |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Tiffany And Bosco; P.A., et al., | ) | |
| Defendants. | ) | |

The Magistrate Judge has jurisdiction over this matter pursuant to the parties' consent. *See* 28 U.S.C. § 636(c). (Doc. 30).

Pending before the Court are: (1) Plaintiff's Objection to Magistrate Judge's Pretrial Order of April 23, 2013 (Doc. 41), which the Court construes as a motion for reconsideration; (2) the Tiffany and Bosco Defendants' Motion to Dismiss (Doc. 10); (3) Defendant Bank of New York Mellon's Motion to Dismiss (Doc. 11), in which the Tiffany and Bosco Defendants join (*see* Doc. 10, p.1); and (4) Plaintiff's Application for a Temporary Restraining Order or in the Alternative a Permanent Injunction (Doc. 42). For the following reasons, this matter is dismissed for failure to state a claim.

**I.      FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff has filed the instant *pro se* Complaint pursuant to the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 *et seq.*, arising from Defendants' attempt to non-judicially foreclose on a deed of trust. (Doc. 1). Plaintiff also seeks a

permanent injunction and declaratory relief. The named Defendants are: Bank of New York Mellon (hereinafter "BNYM"); Tiffany and Bosco, P.A.; and several individuals from the firm of Tiffany  of and Bosco, collectively referred to as the T&B Defendants.[1]

In 2006, Plaintiff borrowed $229,045 (hereinafter "Loan") from Soma Financial (hereinafter "Lender") to purchase property located at 2541 Sierra Bermeja Drive, Sierra Vista, Arizona. (Complaint, Exh. 1). The accompanying Deed of Trust (hereinafter "DOT") named Pioneer Title Agency, Inc., as the Trustee. (Complaint, Exh. 2). Additionally, the DOT specified that Mortgage Electronic Registration Systems, Inc. ("MERS"), which was "acting solely as a nominee for Lender and Lender's successors and assignees", was named as beneficiary.[2]  On August 5, 2011, MERS, through Jorge Valadez, Assistant Secretary of

---

[1]The individual T&B Defendants are: Michael A. Bosco; Michael E. Tiffany; Patricia A. Pike; Leonard J. McDonald, Jr.; and David W. Cowles.

[2]The Ninth Circuit has recognized that:

MERS is a private electronic database, operated by MERSCORP, Inc., that tracks the transfer of the "beneficial interest" in home loans, as well as any changes in loan servicers. After a borrower takes out a home loan, the original lender may sell all or a portion of its beneficial interest in the loan and change loan servicers. The owner of the beneficial interest is entitled to repayment of the loan. For simplicity, we will refer to the owner of the beneficial interest as the "lender." The servicer of the loan collects payments from the borrower, sends payments to the lender, and handles administrative aspects of the loan. Many of the companies that participate in the mortgage industry—by originating loans, buying or investing in the beneficial interest in loans, or servicing loans—are members of MERS and pay a fee to use the tracking system. *See Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490 (Minn.2009).

            ***

MERS was designed to avoid the need to record multiple transfers of the deed by serving as the nominal record holder of the deed on behalf of the original lender and any subsequent lender. *Jackson*, 770 N.W.2d at 490.

At the origination of the loan, MERS is designated in the deed of trust as a nominee for the lender and the lender's "successors and assigns," and as the deed's "beneficiary" which holds legal title to the security interest conveyed. If the lender sells or assigns the beneficial interest in the loan to another MERS member, the change is recorded only in the MERS database,

1   MERS, assigned the DOT to "The Bank of New York Mellon FKA the Bank of New

2   York...as Trustee for the Certificateholders [sic] CWALT, Inc., Alternative Loan Trust 2006-

3   OA3 Mortgage Pass-Through Certificates, Series 2006-OA3." (BNYM's Motion to Dismiss,

4   p. 2) *see also* Complaint, Exh. 3 (the assignment was recorded in Cochise County, Arizona,

5   on August 11, 2011).[3]  On August 9, 2012, Defendant BNYM executed a Substitution of

6

7
8            not in county records, because MERS continues to hold the deed on the new
             lender's behalf. If the beneficial interest in the loan is sold to a non-MERS
9            member, the transfer of the deed from MERS to the new lender is recorded in
             county records and the loan is no longer tracked in the MERS system.
10

11  *Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1038-39 (9th Cir. 2011).

12

13          [3]Plaintiff and Defendant BNYM refer to CWALT, Inc., Alternative Loan Trust 2006-
     OA3 Mortgage Pass-Through Certificates as a real estate mortgage investment conduit trust
14   (hereinafter "REMIC").  (*See* ¶. 15, 25; BNYM's Motion to Dismiss, p. 2).  The District
     Court fo the Eastern District of California has noted that:
15
             "Real Estate Mortgage Investment Conduits or 'REMICS'... are trusts
16           established to facilitate under favorable tax consequences the issuance of
             asset-backed securities in the form of beneficial interests in large pools of real
17           estate mortgages. Typically an institutional lender or 'depositor' assembles a
             pool of mortgages which it or an affiliated investment bank deposits into a
18           trust administered by a trustee, which then issues certificates of beneficial
             ownership to investors. The trust holds the mortgages for the benefit of the
19           certificate holders. When homeowners ... make their monthly mortgage
             payments, or pay off their mortgages[, or] when they sell or refinance, the
20           payments go to the trust and are passed through to the certificate holders ...."
21   *Deutsche Bank National Trust Company v. DeFranco*, 2011 WL 1759816, at
22           *1 n. 1 (Conn.Super.3/14/11) (internal quotation & citation omitted; cited as
             provided by Connecticut Rules of Appellate Procedure, 2011 Connecticut
23           Practice Book, Chapter 67, § 67–11).
24   *Pederson v. Greenpoint Mortg. Funding, Inc.*, 2011 WL 3818560, at *14 (E.D.Cal. Aug. 29,

25   2011).

26

27

28

1   Trustee appointing Defendant David W. Cowles as the successor trustee (hereinafter
2   "Trustee").[4]  (Complaint, Exh. 10).  The Substitution of Trustee was recorded in Cochise
3   County, Arizona, on October 5, 2012, at 4:28 p.m.  (*Id.*).  On October 4, 2012, the Trustee
4   executed a Notice of sale pursuant to the DOT to occur on January 4, 2013.  (Complaint,
5   Exh. 11).  The Notice was recorded in Cochise County, Arizona, on October 5, 2012, at 4:28
6   p.m.  (*Id.*).  Plaintiff filed the instant Complaint on December 26, 2012, and the sale has not
7   occurred.  However, Plaintiff has notified the Court that the Trustee has noticed the sale for
8   June 21, 2013.  (Doc. 43, p.2 & Exh. 1).

9   **II.     PLAINTIFF'S OBJECTION**

10  Plaintiff has filed an objection to this Court's order of April 23, 2013 (Doc. 41).
11  Because all parties have consented to the jurisdiction of the Magistrate Judge in this case,
12  upon entry of judgment, an aggrieved party may appeal directly to the United States court
13  of appeals from the judgment of the magistrate judge in the same manner as an appeal from
14  any other judgment of a district court. *See* 28 U.S.C. § 636(c). There is, however, no statutory
15  provision for the interim filing of objections to a magistrate judge's pretrial rulings or orders.
16  *See id*. Accordingly, the Magistrate Judge construes Plaintiff's document as a motion for
17  reconsideration of the Court's order of April 23, 2013 (Doc. 41). "Motions to reconsider are
18  appropriate only in rare circumstances." *Defenders of Wildlife v. Browner*, 909 F. Supp.
19  1342, 1351 (D. Ariz. 1995). "The purpose of a motion for reconsideration is to correct
20  manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v.*
21  *Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Such motions should not be used for the purpose
22  of asking a court "'to rethink what the court had already thought through–rightly or
23  wrongly.'" *Defenders of Wildlife*, 909 F. Supp. at 1351 (quoting *Above the Belt, Inc. v. Mel*

24  _____

25

26  [4]The Substitution of Trustee indicates that it was executed by Bank of America as
27  attorney in fact and was signed by Barbara Sawyer, Assistant Vice President.  (Complaint,
    Exh. 10; *see also* Complaint, Exh. 5 (indicating that the loan servicer is Bank of
28  America/Fidelity)).

1   *Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). Plaintiff reasserts the same

2   legal and factual arguments raised in her previous motions, and argues that the Magistrate

3   Judge's interpretation of the law is incorrect. Plaintiff's document provides no basis for

4   reconsideration of the Magistrate Judge's order and is therefore denied. Further, to the extent

5   Plaintiff refers to the Court's authority to vacate the referral to the Magistrate Judge under

6   "extraordinary circumstances," Plaintiff neither states as cause any extraordinary

7   circumstances, nor requests as relief that the referral be vacated. Thus, Plaintiff's objections

8   will not be construed as a motion to vacate the referral pursuant to 28 U.S.C. §636(c)(4).

9   **III.   DEFENDANTS' MOTIONS TO DISMISS**

10   Defendants seek dismissal of this action pursuant to Rule 12(b) of the Federal Rules

11   of Civil Procedure for failure to state a claim.  Although Plaintiff was advised of the

12   requirements set out in LRCiv 7.2, Rules of Practice of the U.S. District Court for the District

13   of Arizona, for filing a response to the motions and that her  failure to respond may result in

14   granting of the motions summarily (*see* Doc. 14), Plaintiff did not file any documents

15   captioned as responses.  Instead, Plaintiff maintains that she "previously responded to

16   [D]efendants' motion to dismiss in her Replies to [D]efendants' responses to Plaintiff's

17   Motion to Strike in March 2013, [Dkt 25] and [Dkt 28] beginning on pages 5 of the Replies;

18   EFFECT IF THE DEFENDANTS' 'MOTION TO DISMISS' IS GRANTED.'   Plaintiff

19   does not wish to be repetitive or redundant."  (Doc. 41, p. 6).  In light of Plaintiff's *pro se*

20   status, the Court will consider the documents cited by Plaintiff as her responses.

21   Defendants argue that the FDCPA does not apply to this action, nor does Plaintiff's

22   reliance on the Uniform Commercial Code (hereinafter "UCC") or a fraud theory alter this

23   conclusion.  Further, according to Defendants, Plaintiff's Chapter 7 discharge has no effect

24   on the DOT. Therefore, Defendants assert that Plaintiff fails to state a claim for relief and this

25   action must be dismissed pursuant to Fed.R.Civ.P. 12(b).

26   Plaintiff, contending that her allegations must be accepted as true, essentially restates

27   the allegations and legal contentions advanced in her Complaint. (*See* Doc. 25, pp. 5-9; Doc.

28   28, pp. 5-9).

1

A.      Standard

2       "'To survive a motion to dismiss [under Fed.R.Civ.P. 12(b)(6)], a complaint must

3  contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

4  on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the

5  reasonable inference that the defendant is liable for the misconduct alleged.'" *Telesaurus*

6  *VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010), *cert. denied,* __ U.S. __, 132 S.Ct.

7  95 (2011), (*quoting Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)); *see also Moss v. United*

8  *States Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (to defeat a motion to dismiss, the "non-

9  conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

10 suggestive of a claim entitling the plaintiff to relief."). Dismissal under Rule 12(b)(6) "can

11 be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

12 under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't.,* 901 F.2d 696, 699 (9th

13 Cir. 1988), *abrogated on other grounds by Bell Atl. Corp. v. Twombly,* 530 U.S. 544 (2007).

14      "[T]he tenet that a court must accept as true all of the allegations contained in a

15 complaint..." does not apply to legal conclusions.  *Iqbal,* 556 U.S. at 678; *see also*

16 *Telesaurus,* 623 F.3d. at 1003 (pleadings that are no more than legal conclusions "'are not

17 entitled to the assumption of truth.'") (*quoting Iqbal,* 556 U.S. at 679).  Thus, "[t]hreadbare

18 recitals of the elements of a cause of action, supported by mere conclusory statements, do not

19 suffice." *Iqbal*, 556 U.S. at 678.  Moreover, the court "cannot assume any facts necessary

20 to the [plaintiffs']... claim that they have not alleged."  *Jack Russell Terrier Network of*

21 *Northern Calif. v. American Kennel Club, Inc.,* 407 F.3d 1027, 1035 (9th Cir. 2005).

22      However, the court will assume "'well-pleaded factual allegations,'...to be true, 'and

23 then determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus,* 623

24 F.3d. at 1003 (*quoting Iqbal*, 556 U.S. at 679); *see also Iqbal,* 556 U.S. at 678 ("A claim has

25 facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26 reasonable inference that the defendant is liable for the misconduct alleged.").  "The

27 plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

28 sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.

1     Determining plausibility is a "context-specific task..." that requires the court to "draw on its

2     judicial experience and common sense." *Id.* at 679. A complaint cannot survive dismissal

3     where the court can only infer that a claim is merely possible rather than plausible. *Id.*

4           As a general rule, the district court may not consider any material beyond the

5     pleadings when resolving a motion to dismiss for failure to state a claim. *Lee v. City of Los*

6     *Angeles,* 250 F.3d 668, 688 (9th Cir. 2001), *impliedly overruled on other grounds as*

7     *discussed in Gallardo v. DiCarlo,* 203 F.Supp.2d 1160, 1162 n.2 (C.D. Cal. 2002).

8     However, the court may consider material submitted as part of the complaint, such as the

9     exhibits which Plaintiff has attached to her Complaint. *See Id.*

10           When the plaintiff is *pro se,* the complaint must be liberally construed in the interests

11     of justice. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (*pro se* pleadings are held to "less

12     stringent standards than formal pleadings drafted by lawyers..."); *Hebbe v. Pliler,* 627 F.3d

13     338, 342 (9th Cir. 2010) (courts must "continue to construe *pro se* filings liberally....");

14     *Johnson v. Reagan,* 524 F.2d 1123, 1124 (9th Cir. 1975)("Pleadings should be liberally

15     construed in the interests of justice, particularly when a pleader is not learned in the law.").

16     Nonetheless, *"[p]ro se* litigants must follow the same rules of procedure that govern other

17     litigants." *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987), *overruled on other grounds by*

18     *Lacey v. Maricopa County,* 693 F.3d 896 (9th Cir. 2012); *see also Ghazali v. Moran,* 46 F.3d

19     52 (9th Cir. 1995) ("*pro se* litigants are bound by the rules of procedure.").

20           If the Court determines that a pleading could be cured by the allegation of other facts,

21     a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the

22     action. *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court

23     should not, however, advise the litigant how to cure the defects. This type of advice "would

24     undermine district judges' role as impartial decisionmakers." *Pliler v. Ford*, 542 U.S. 225,

25     231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13 (declining to decide whether the court was

26     required to inform a litigant of deficiencies).

27         B.    Introduction

28           Arizona's Deed of Trust Act, A.R.S. §§ 33-801 to 33-821, "is a comprehensive set of

1    statutes governing the execution and operation of deeds of trust." *In re Bisbee,* 157 Ariz. 31,

2    33, 754 P.2d 1135, 1137 (1988); *see also Patton v. First Fed. Sav. & Loan Ass'n. of Phoenix,*

3    118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) (Arizona's Deed of Trust "statutes set forth the

4    only procedure for a valid trustee's sale."). The Arizona court has recognized that in contrast

5    to a mortgage, which "generally may be foreclosed only by filing a civil action..., under a

6    Deed of Trust, the trustee holds a power of sale permitting him to sell the property out of

7    court with no necessity of judicial action." *Patton,* 473 Ariz. at 477, 578 P.2d at 156. *See*

8    *also Hogan v. Washington Mut. Bank,* 230 Ariz. 584, ¶5, 277 P.3d 781, 782-83 (2012)

9    ("When parties execute a deed of trust and the debtor thereafter defaults, A.R.S. §33-807

10   empowers the trustee to sell the real property securing the underlying note through a non-

11   judicial sale.").

12        C.    FDCPA

13        All seven of Plaintiff's causes of action are brought specifically pursuant to the

14   FDCPA.

15        "As a threshold matter, the FDCPA applies only to a debt collector who engages in

16   practices prohibited by the Act in an attempt to collect a consumer debt." *Mansour v. Cal-*

17   *Western Reconveyance Corp.,* 618 F.Supp.2d 1178, 1182 (D. Ariz. 2009). Courts within the

18   Ninth Circuit, as well as other circuit courts, have consistently held that "mortgagees and

19   their beneficiaries, including mortgage servicing companies, are not debt collectors subject

20   to the FDCPA." *Id.* at 1182. *See also Diessner v. MERS,* 618 F.Supp. 2d 1184 (D. Ariz.

21   2009) (mortgagees and their assignees are not debt collectors under the FDCPA), *aff'd* 384

22   Fed.Appx. 609 (9th Cir. 2010); *Zinni v. Jackson White, P.C.,* 2012 WL 869008, at *2 (D.

23   Ariz. Mar. 4, 2012) ("Because a foreclosure trustee is not a debt collector and a non-judicial

24   foreclosure is not the collection of a debt, plaintiffs' FDCPA claim must be dismissed.";

25   *Pryzblyski v. Stumpf,* 2011 WL 31194, at *5 (D. Ariz. Jan. 5, 2011) ("As *Monsour* makes

26   plain, Plaintiff can state no Fair Debt Collection Practices Claim... that arises from a non-

27   judicial foreclosure proceeding, because a 'non-judicial foreclosure proceeding is not the

28   collection of a 'debt' for purposes of the FDCPA."); *Hulse v. Ocwen Fed. Bank, FSB,* 195

F.Supp.2d 1188, 1204 (D. Or. 2002) ("[T]he activity of foreclosing on [real] property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA."); *Perry v. Stewart Title,* 756 F.2d 1197, 1208 (5th Cir. 1985) (neither mortgage servicing company nor pre-default assignee on promissory note were debt collectors). Accordingly, Defendants are not considered debt collectors under the FDCPA, thus Plaintiff fails to state a claim under the FDCPA.

> 1.    Allegations challenging the validity of the assignment and substitution of Trustee

Because all of Plaintiff's claims are premised on the FDCPA, her entire Complaint must be dismissed for failure to state a claim. Within her FDCPA claims, Plaintiff advances allegations attacking the validity of Defendant BNYM's authority, asserting violation of the UCC, claiming that the obligation was discharged, and claiming fraud. Defendant BNYM has addressed these claims. Construing Plaintiff's Complaint liberally, to any extent that Plaintiff's allegations could be read to challenge the conclusion that Defendants lack authority to take the actions they have which have led to initiation of non-judicial foreclosure proceedings and which exclude them from the definition of debt collectors under the FDCPA, such claims would also be subject to dismissal. For example, Plaintiff challenges Defendant BNYM's authority to act as beneficiary. According to Plaintiff, the assignment to Defendant BNYM was not properly perfected because the "original note and deed of trust...never left Countrywide's possession, in 2006 when the trust was originally formed" (Complaint, p. 9) and because Defendant BNYM "did not file the assignment of the notes or deeds of trust prior to the expiration of the ninety (90) day period as required by..." the Internal Revenue Code, section 860 governing REMICs. (*Id.* at p. 25). Plaintiff also alleges that MERS "who is not named on the Note, attempted to transfer the deed of trust hoping that this would operate to transfer the..." Note. (*Id.* at p. 19). According to Plaintiff, there is a question whether the assignment to Defendant BNYM was accomplished. (*Id.* at pp. 9-10).

First, 26 U.S.C. § 860, relied upon by Plaintiff, addresses deductions for deficiency dividends and has no bearing on the instant matter. Second, the DOT, which clearly

1    references the underlying Note, (*see* Complaint, Exh. 2, p.1), specifically indicates MERS

2    "is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the

3    beneficiary under this Security Instrument."  (*Id.*).  Third, in her Complaint, Plaintiff cites

4    *Kemp v. Countrywide Home Loans, Inc.,* 440 B.R. 624 (D.N.J. 2010), to support her theories

5    that the Note was never transferred.  (*See* Complaint, pp. 15-16).  *Kemp* was decided under

6    New Jersey law and is inapposite.  Under Arizona law, "the transfer of a contract secured by

7    a deed of trust 'shall operate as a transfer of the security for such contract.'  A.R.S. §33-817."

8    *In re Vasquez,* 228 Ariz. 357, 359, 266 P.3d 1053, 1055 (2011).  Additionally, the Arizona

9    Supreme Court has held that beneficiaries are not required to show ownership of the note that

10    a deed of trust secures before a trustee can conduct a non-judicial foreclosure sale.  *Hogan*

11    *v. Washington Mutual Bank, N.A.,* 230 Ariz. 584 at ¶8, 277 P.3d 781, 783 (2012).  Instead,

12    "[t]he *only* proof of authority the trustee's sales statutes require is a statement indicating the

13    basis for the trustee's authority."  *Id.* (citations omitted) (emphasis added). *See also Cardin*

14    *v. Wilmington Finance, Inc.,* 2013 WL 1123815 at *2 (D. Ariz. Mar. 18, 2013) (relying on

15    *Hogan* and other cases from the District of Arizona to reject the plaintiffs' claim based on

16    "the theory that in order to foreclose[,] a party must show possession of the original note...");

17    *Hensley v. Bank of New York Mellon,* 2013 WL 791294 at *5 (D. Ariz. Mar. 4, 2013)

18    (relying on *Hogan* to reject the plaintiff's claim that the defendant must show ownership or

19    otherwise document its right to enforce the underlying note prior to selling the real property

20    secured by the underlying note through a non-judicial sale.).

21         Moreover, as Defendant BNYM points out, under Arizona law the fact that the

22    assignment of the mortgage was recorded five years after it was made does not defeat

23    Defendant BNYM's status as beneficiary of the DOT. (Defendant BNYM's Motion to

24    Dismiss, p. 4).  The Arizona Supreme Court has made clear that "Arizona law expressly

25    provides that '[u]nrecorded instruments, as between the parties and their heirs...shall be valid

26    and binding.'" *In re Vasquez,* 228 Ariz. at 359, 266 P.3d at 1055 (*quoting* A.R.S. §33-

27    412(B)) (holding that Arizona law "does not require that an assignment of a deed of trust be

28    recorded before recording the notice of trustee's sale.").  Consequently, "while the failure to

1    record an assignment of a deed of trust might leave an assignees unprotected against claims

2    by some purchasers or creditors, it does not affect a deed's validity as to the obligor." *Id.*

3    Thus, any delay in recording the assignment does not defeat Defendant BNYM's interest *vis*

4    *a vis* Plaintiff. *See id.*

5           Plaintiff also attempts to invalidate the assignment from MERS to Defendant BNYM

6    and designation of Defendant Cowles as successor trustee by alleging that Mr. Valadez, on

7    behalf of MERS, and Ms. Sawyer, on behalf of Defendant BNYM, acted without actual

8    authority. (*See* Complaint, pp. 8, 10). Defendants assert that "[r]egardless whether or not

9    Mr. Valadez had authority when he executed the Assignment, [Defendant] BNYM does not

10   contest his actions, and therefore, ratifies them." (Defendant BNYM's Motion to Dismiss,

11   p. 6 (*citing Brown v. Bank of America N.A.,* 2011 WL 2633150, at *1 (D. Nev. July 5, 2011)

12   ("Plaintiff argues that the employees who signed various documents might not have had

13   authority to do so...but the fact that Defendants desire to proceed with foreclosure is proof

14   of ratification of these employees' actions.")). Plaintiff did not specifically respond to

15   Defendants' argument on this issue. Instead, Plaintiff merely restated her allegations as

16   raised in the Complaint. (*See* Doc. 25, p.8; Doc. 28, p.8). "Parties must come forward with

17   their points and authorities in support of or in opposition to a motion." *E.E.O.C. v. Eagle*

18   *Produce, L.L.C.,* 2008 WL 2796407, at *2 (D. Ariz. July 18, 2008). Plaintiff's failure to

19   respond to Defendants' argument "serves as an independent basis upon which to grant..."

20   Defendants' Motion to Dismiss on this issue. *Currie v. Maricopa County Cnty. Coll. Dist.,*

21   2008 WL 2512841, at *2 n.1 (D. Ariz. June 20, 2008).

22          Moreover, to survive dismissal, the facts alleged by the plaintiff must be sufficient to

23   nudge the claims "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 547.

24   Plaintiff claims that Mr. Valadez acted without authority because a 2012 case mentions that

25   Jorge Valadez is Vice President of Recontrust. (*See* Complaint, p. 10 (*citing Riehm v.*

26   *Countrywide Home Loans, Inc.,* 2012 WL 3686798, at * 4 (D. Nev. Aug. 27, 2012)).

27   Regardless, this does not support the conclusion that Mr. Valadez was without authority to

28   act on behalf of MERS. On the instant record, Plaintiff's conclusory allegations fail to state

1     a claim. *See Bergdale v. Countrywide Bank FSB,* 2012 WL 4120482, at *5 (D. Ariz. Sept.

2     18, 2012) (rejecting claim that individual did not have authority to sign as Assistant Secretary

3     of MERS where such claim had no legal support and the plaintiff "pleads no fact that

4     suggests that [the individual named] was not an Assistant Secretary of MERS."); *Phillips*

5     *v. Wells Fargo Bank, N.A.,* 2009 WL 3756698 at *4 (S.D. Cal. Nov. 6, 2009) (dismissing

6     claim where the plaintiff failed to support allegation that assignment was made by an

7     individual who was not Vice President of MERS).

8          Plaintiff's claim that Ms. Sawyer lacked authority may be based on Plaintiff's

9     allegation that Defendant BNYM was without authority and, thus it follows that Ms.

10    Sawyer's actions in reliance on Defendant BNYM's interest were invalid.  Such a claim

11    cannot stand given the August 5, 2011 assignment of the DOT to Defendant BNYM.

12          Plaintiff also argues that upon any alleged transfer to the REMIC, "the status of

13    'lender' as described in the Deed of Trust, was relinquished at that time as [t]he REMIC is

14    a trust and has no 'lenders', only fiduciaries of the 'certificate holders.'  The 'lender' as

15    described in the Deed of Trust no longer exits and no longer has any nominee who can

16    transfer foreclosure rights...." (Complaint, pp. 12-13) (footnote omitted).  Instead, according

17    to Plaintiff, Defendant BNYM "is nothing more than a fiduciary of the Certificate

18    Holders...." (*Id.* at p. 13).  However, the District Court for the Northern District of California

19    has persuasively pointed out that:

20          The argument that parties lose their interest in a loan when it is assigned to a
           trust pool or REMIC has been rejected by numerous courts. *See, e.g., Wadhwa*
21          *v. Aurora Loan Servs., LLC,* No. 11–1784, 2011 WL 2681483, at *4 (E.D.Cal.
           July 8, 2011) (suggestion that "assignment of the note to a [REMIC] renders
22          any interest in the property other than plaintiffs' somehow invalid" has been
           "rejected by numerous courts"); *Hafiz v. Greenpoint Mortgage Funding, Inc.*,
23          652 F.Supp.2d 1039, 1043 (N.D.Cal.2009) (argument that "all defendants lost
           their power of sale pursuant to the deed of trust when the original promissory
24          note was assigned to a trust pool" is "both unsupported and incorrect").  The
           alleged "securitization of the loan does not in fact alter or affect the legal
25          beneficiary's standing to enforce the deed of trust." *Reyes v. GMAC Mortgage*
           *LLC,* No. 11–0100, 2011 WL 1322775, at *2 (D.Nev. Apr.5, 2011); *see also*
26          *Nguyen v. Bank of Am. Nat'l Ass'n*, No. 11–3318, 2011 WL 5574917, at *9
           (N.D.Cal. Nov.15, 2011) (securitization of mortgage loan does not provide
27          mortgagor with cause of action). "[S]ecuritization merely creates 'a separate
           contract, distinct from [p]laintiffs['] debt obligations" under the note, and does
28          not change the relationship of the parties in any way. *Reyes*, 2011 WL

1322775, at *3 (*quoting Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan Corp.*, No. 10–CV–375, 2010 WL 4788209, at *2 (D.Utah Nov. 16, 2010)).

*Logvinov v. Wells Fargo Bank*, 2011 WL 6140995, at * 3 (N.D. Cal. Dec. 9, 2009). *See also Frazier v. Aegis Wholesale Corp.*, 2011 WL 6303391 (N.D.Cal. Dec.16, 2011) ("Plaintiffs seem to argue that the only persons who would have authority to foreclose are the certificate holders of the securitized trust.... Courts, however, have typically rejected such arguments."). Consequently, Plaintiff's challenge based on this line of reasoning is foreclosed.

### 2.    The UCC

Plaintiff alleges that the transfer of the Note is invalid because it did not comply with the Arizona Uniform Commercial Code and, thus, neither the Note nor DOT are negotiable instruments.  (Complaint, pp. 17, 19).  Defendant BNYM points out that "no one seeks to negotiate the note here, so the UCC just does not apply."  (Defendant BNYM's Motion to Dismiss, p. 7 (*citing Hogan,* 230 Ariz. at ¶9, 277 P.3d at 783)).  Defendant is correct that Plaintiff's reliance on the UCC is misplaced.  The Arizona Supreme Court has been clear that, where the trustees do not seek to collect on the underlying note but instead notice sale pursuant to the trust deeds, the UCC does not apply:

> The trust deed statutes do not require compliance with the UCC before a trustee commences a non-judicial foreclosure. *See In re Krohn*, 203 Ariz. 205, 208 ¶ 8, 52 P.3d 774, 777 (2002) ("[D]eed of trust sales are conducted on a contract theory under the power of sale authority of the trustee.").

*Hogan,* 230 Ariz. at ¶9, 277 P.3d at 783.  Plaintiff's reliance on the UCC is without merit.

### 3.    Chapter 7 discharge

Plaintiff alleges that the Note debt was discharged in her Chapter 7 bankruptcy proceeding, therefore, Defendant BNYM had no standing to enforce the loan.  (Complaint, p. 26).

> It is well settled that valid, perfected liens and other secured interests pass through bankruptcy unaffected. *Dewsnup v. Timm,* 502 U.S. 410, 418, 112 S.Ct. 773, 778–79, 116 L.Ed.2d 903 (1992). The majority of courts hold, and the legislative history of § 506(d) establishes, that valid liens that have not been disallowed or avoided survive the bankruptcy discharge of the underlying debt. *In re Simmons,* 765 F.2d 547, 556–57 (5th Cir.1985); *Estate of Lellock v. Prudential Ins. Co. of America*, 811 F.2d 186, 188–89 (3d Cir.1987); *see also In re Hagemann*, 86 B.R. 125, 126 (Bankr.N.D.Ohio 1988) (listing cases);

1

2

3

> *Chandler Bank of Lyons v. Ray*, 804 F.2d 577, 579 (10th Cir.1986) ("for sections in the Code which relate to automatic stays and to lien avoidance to have any substance at all necessarily leads to the conclusion that unavoided liens pass through § 506(d) without action by the lien holder").

4

5

*In re Cortez,* 191 B.R. 174, 177 (9th Cir. BAP 1995) (footnote omitted). Defendants assert

6

that "Albritton's Bankruptcy discharge has no[] effect on BNYM's ability to instruct the

7

Trustee to proceed with a foreclosure. She did not take any action in the bankruptcy court

8

to strip the lien off the Property." (Defendant BNYM's Motion to Dismiss, p. 8). Plaintiff

9

has not refuted Defendants' contention. There is simply nothing in the record that would

10

reasonably support the inference that the lien was avoided or disallowed during Plaintiff's

11

bankruptcy proceeding. *See Moss,* 572 F.3d at 969 (to defeat a motion to dismiss, the "non-

12

conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

13

suggestive of a claim entitling the plaintiff to relief."). On the instant record, Plaintiff's

reliance on the Chapter 7 bankruptcy proceedings does not provide a basis for relief.

14

### 4.    Fraud

15

Plaintiff also alleges that the Note and DOT were procured by fraud. (Complaint,

16

p.4). She asserts that it was fraudulent for the Note to list Soma Financial as the original

17

lender when the intent was to securitize the Loan. (*Id.* at p. 12). She also claims that she was

18

not informed that the Loan would be securitized or that there would be a Master Servicer of

19

Loan. (*Id.*).

20

To state a claim for fraud, Plaintiff must plead facts demonstrating "that the defendant

21

made a false, material representation that he knew was false or was ignorant of its truth, with

22

the intention that the hearer of the representation act on it in a manner reasonably

23

contemplated, that the hearer was ignorant of the representation's falsity, rightfully relied on

24

the truth of the representation, and sustained consequent and proximate damage." *Haisch*

25

*v. Allstate Insur. Co.,* 197 Ariz. 606, 610, 5 P.3d 940, 944 (Ct. App. 2000). The DOT states

26

there may be successors and assigns of the Lender and Beneficiary, the Loan can be sold one

27

or more times without prior notice to the Borrower, and there will be a Loan Servicer.

28

(Complaint, Exh. 2, pp. 2, 10). On the instant record, Plaintiff's allegations of fraud are

1    meritless.

2               D.      Appointment of Defendant Cowles as Trustee

3          The T&B Defendants argue that "[t]o the extent that the Complaint claims that the

4    [they]... were under an obligation to ensure that the appointment of Defendant Cowles as

5    Trustee was legitimate or that nonjudicial foreclosure was appropriate, that is incorrect[]"

6    given that Arizona law permits"absolute reliance on the direction or information provided

7    to them by the beneficiary." (T&B Defendants' Motion to Dismiss, p. 5 (*citing* A.R.S. §33-

8    820(A)).   Plaintiff alleges that the T&B Defendants "have no authorization to conduct any

9    type of enforcement" due to the allegedly "invalid and non-authentic substitution of trustee

10   and the fact that the firm does not represent a bona fide 'creditor[]'" under the FDCPA.

11   (Complaint, pp. 16-17).   According to Plaintiff, the Substitution of Trustee document

12   appointing Defendant Cowles "is incomplete and facially void..." because "one is left to

13   guess who Ms. Sawyer is the Assistant Vice President for...." (*Id.* at p. 8).   Plaintiff also

14   alleges that "[i]t is entirely plausible that the Notice of Trustee's Sale was recorded before

15   the invalid Substitution of Trustee document was recorded." (*Id.* at p. 17).   She alleges that

16   on October 15 and 30, 2012, she received recorded copies of the Notice of Trustee's Sale and

17   Notice of Substitution which did not indicate the time the documents were recorded in

18   Cochise County. (*Id.*).   She also alleges that documents received on October 30, 2012, bore

19   only an "in[-]house stamp[] by Defendant Tiffany & Bosco in order to cover up the

20   simultaneous order of recording in Cochise County, a deceptive practice." (*Id.*).

21         The record reflects that the Notice of Substitution of Trustee and the Notice of Trustee

22   Sale set to occur on January 4, 2013, were both recorded in Cochise County on October 5,

23   2012 at 4:28 p.m. (*See* Complaint, Exhs. 10, 11).   The record also contains a Notice of

24   Trustee Sale set for January 4, 2013, which is stamped "RECORDED OCT 5, 2012", and

25   does not reflect the time the document was recorded. (*Id.* at Exh. 11).   The date stamped is

26   the correct date that the document was recorded.   On the instant record, Plaintiff's allegations

27   that the T&B Defendants engaged in deceptive practices are merely conclusory and are

28   implausible given that the date stamped reflects the correct date the document was recorded.

1    Further, as to Plaintiff's allegation that the T&B Defendants are liable because the

2    appointment of Defendant Cowles was invalid due to Ms. Sawyer's alleged lack of authority

3    to act,  the Ninth Circuit has made clear that:

4         [A.R.S. §] 33–807(E) provides that a "trustee is entitled to be immediately
          dismissed" from any action other than one "pertaining to a breach of the
5         trustee's obligations," because the trustee is otherwise bound by an order
          entered against a beneficiary for actions that the trustee took on its behalf. The
6         only breach that the plaintiffs allege against Tiffany & Bosco is that it failed
          to recognize that its appointment was invalid.  According to the plaintiffs, the
7         appointment was invalid because MERS is a sham beneficiary and lacks power
          to "appoint" a trustee. However, a trustee such as Tiffany & Bosco has the
8         "absolute right" under Arizona law "to rely upon any written direction or
          information furnished to him by the beneficiary." Ariz.Rev.Stat. § 33–820(A).
9         Thus, Tiffany & Bosco did not have an obligation to consider whether its
          presumptively legal appointment as trustee, which was recorded in the county
10        records, was invalid based on the original designation of MERS as a
          beneficiary. Accordingly, Tiffany & Bosco was properly dismissed.

11   *Cervantes,* 656 F.3d at 1045.  Likewise, in the instant case, the T&B Defendants are properly

12   dismissed.  *See id.*

13        The T&B Defendants also point out that "Plaintiff does not allege facts that support

14   the notion that the T&B Defendants failed to comply with any of the obligations set forth in

15   Arizona's deed of trust statutes or in the Deed of Trust itself, or that, derivatively, Defendant

16   T&B failed to do so. " (T&B Defendants' Motion to Dismiss, p. 6).  The T&B Defendants

17   request attorney fees and court costs for having to defend against Plaintiff's action.  (*Id.*).

18   Section 33-807(E) provides that: "If the trustee is joined as a party in any other action, the

19   trustee is entitled to be immediately dismissed and to recover costs and reasonable attorney

20   fees from the person joining the trustee." A.R.S. § 33-807(E). The T&B Defendants may file

21   a motion for attorney fees and costs in accordance with LRCiv 54.2.  *See Cervantes v.*

22   *Countrywide Home Loans, Inc.,* 2009 WL 3157160, at * (D. Ariz. Sept. 24, 2009) (allowing

23   same), *aff'd by Cervants,*656 F.3d 1034.

24        E.    Plaintiff's Request for Declaratory and Injunctive Relief

25        Plaintiff requests that the Court "make a finding and issue appropriate orders stating

26   that none of the named Defendants...have any right or interest in Plaintiff's Note, Deed of

27   Trust, or the Property which authorizes...them to collect mortgage payments or enforce the

28

terms of the Note or Deed of Trust in any matter whatsoever.[] Plaintiff simplifies this as a request for 'a determination of ownership of the Note and Deed of Trust,' if they are valid." (Complaint, p. 27).  The Court may not issue declaratory judgment absent a showing of an "actual controversy" between the parties.  28 U.S.C. § 2201(a); *Theme Promotions, Inc. v. News Am. Marketing FSI,* 546 F.3d 991, 101 (9th Cir. 2008) (affirming denial of leave to amend to add claim for declaratory relief where there was no actual controversy).  ""[T]he requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions.'" *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharm (USA) Inc.,* 560 F.3d 935, 943 (9th Cir. 2009) (*quoting* 10B Wright, Miller & Kane, *Federal Practice and Procedure: Civil* § 2768 (3d ed.1998)).  Therefore, Plaintiff must demonstrate plausibility of entitlement to relief.  *See Iqbal,* 556 U.S. at 678.  Because, as discussed within this Order, Plaintiff's claims that Defendants fall within the FDCPA, and challenges to Defendants' authority to enforce the Note and DOT, are without merit, it follows that Plaintiff has  failed to sufficiently allege a claim for declaratory relief.

Likewise, as to Plaintiff's request for injunctive relief, it is a

> well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. *See, e.g., Jensen v. Quality Loan Serv. Corp.,* 702 F.Supp.2d 1183, 1201 (E.D.Cal.2010) ("A request for injunctive relief by itself does not state a cause of action"); *Henke v. ARCO Midcon, L.L.C.,* 750 F.Supp.2d 1052, 1059–60 (E.D.Mo.2010) ("Injunctive relief, however, is a remedy, not an independent cause of action."); *Plan Pros, Inc. v. Zych,* 2009 WL 928867, at *2 (D.Neb. Mar. 31, 2009) ("no independent cause of action for injunction exists"); *Motley v. Homecomings Fin., LLC,* 557 F.Supp.2d 1005, 1014 (D.Minn.2008) (same). Injunctive relief may be available if Plaintiffs are entitled to such a remedy on an independent cause of action.

*Marzan v. Bank of America,* 779 F.Supp.2d 1140, 1146 (D. Haw. 2011); *see also Kwai Ling Chan v. Chase Home Loans, Inc.,* 2012 WL 1252649, at *4 (W.D.Wash. Apr. 13, 2012) (dismissing claims for declaratory and injunctive relief "because they are remedies and not causes of action.").  *Accord City of Tucson v. Clear Channel Outdoor, Inc.,* 218 Ariz. 172, 188, 181 P.3d 219, 234 (Ct. App. 2008) (stating that an injunction is an equitable remedy); *Jones v. Santa Cruz County,* 72 Ariz. 374, 378, 236 P.2d 361, 364 (1951) ("an injunction will not issue to restrain a lawful act.").  Because Plaintiff's claims fail on the merits, Plaintiff is

1    not entitled to injunctive relief.

2         F.    Amendment

3         When dismissing for failure to state a claim, the court should grant leave to amend

4    unless amendment would be futile. Given that the law is settled against Plaintiff's theories,

5    amendment would be futile. *See Mortgage Electronic Registration Systems Litigation MDL,*

6    2012 WL 1931365, at *4 (D. Ariz. May 25, 2012) (denying leave to amend "[b]ecause

7    Plaintiff's claims depend on legal theories that have repeatedly been rejected by this Court,

8    and in light of the foregoing analysis, the Court finds that Plaintiff's Complaint could not be

9    cured of allegations of other facts and, thus, allowing Plaintiff to amend her Complaint would

10   be futile.").

11   **IV.  Application for Temporary Restraining Order or in the Alternative a Permanent**

12   **Injunction**

13        Finally, Plaintiff has filed an Application for a Temporary Restraining Order or in the

14   Alternative a Permanent Injunction (Doc. 42) seeking to prevent the sale of Plaintiff's

15   property at a trustee's sale which Plaintiff alleges is currently scheduled for on June 21,

16   2013, at 11:00 a.m. An injunction "is an extraordinary and drastic remedy," *Mazurek v.*

17   *Armstrong*, 520 U.S. 968, 972 (1997), that is "never awarded as of right." *Winter v. Natural*

18   *Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Because of the remedy's extraordinary nature,

19   plaintiff bears the burden of proof. *See Mazurek*, 520 U.S. at 972. An injunction should not

20   be granted if any doubt exists or is created in the record regarding the merits of a plaintiff's

21   claim. *See Sid Berk, Inc. v. Uniroyal, Inc.*, 425 F. Supp. 22, 29 (C.D. Cal. 1977) ("The

22   existence of any debate or doubts on the record as to the merits of the claim or the power of

23   the court to act will ordinarily bar the granting of a preliminary injunction.") (citation

24   omitted). The Court has reviewed Plaintiff's Complaint. Even considering Plaintiff's *pro se*

25   status and, in so doing, construing Plaintiff's Complaint liberally, the Court finds that

26   Plaintiff has failed to state a claim upon which relief may be based. In order to obtain

27   preliminary injunctive relief, the moving party must show a likelihood of success on the

28   merits. *Winter*, 555 U.S. at 20. Because the Court finds that Plaintiff's Complaint fails to

1  state a claim, Plaintiff has  necessarily failed to demonstrate a likelihood of success on the

2  merits. As such, the Court denies Plaintiff's request for a temporary restraining order, or, in

3  the alternative, a permanent  injunction, to enjoin the sale of Plaintiff's property.

4  **V.      CONCLUSION**

5       For the foregoing reasons, Plaintiff has failed to allege claims upon which relief may

6  be granted.  Therefore,

7       IT IS HEREBY ORDERED that Defendants Tiffany & Bosco, P.A., Michael A.

8  Bosco, Jr., Michael E. Tiffany, Patricia Pike, Leonard J. McDonald, Jr., and David W.

9  Cowles' Motion to Dismiss (Doc. 10) and Defendant Bank of New York Mellon's Motion

10 to Dismiss (Doc. 11) are GRANTED.

11      IT IS FURTHER ORDERED that Plaintiff's Objection to Magistrate Judge's Pretrial

12 Order of April 23, 2013 (Doc. 41) is construed as a Motion to Reconsider and DENIED.

13      IT FURTHER ORDERED that Plaintiff's  Application for a Temporary Restraining

14 Order or in the Alternative a Permanent Injunction (Doc. 42) is DENIED.

15      DATED this 18th day of June, 2013.

16

17      _____

18              Héctor C. Estrada
            United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28